## THEOBALD, TREASURER, v. CLAPP.

[No. 6,440.   Filed January 26, 1909.]

1. APPEAL.—*Briefs.*—*Waiver.*—Errors not discussed in appellant's brief in the points and authorities are waived.   p. 192.

2. APPEAL.—*Assignments of Errors.*—*Exceptions to Conclusions of Law.*—In order to question conclusions of law on appeal, a proper exception must be taken to each conclusion in the trial court, and error assigned thereon.   p. 192.

3. APPEAL.—*Assignments of Errors.*—*"Rendering Judgment for Appellee."*—An assignment, on appeal, that the trial court erred in "rendering judgment in favor of appellee" presents no question. p. 193.

4. APPEAL.—*Bills of Exceptions.*—*How Made Part of Record.*— Where a motion for a new trial was overruled and an exception taken on July 6, and six months' time was granted on July 7, for filing bills of exceptions, and on October 23, appellee's motion for judgment on the special findings was sustained and a decree entered, and on October 26, an appeal was prayed and granted and six months' time granted in which to file bills of exceptions, a bill filed on the following January 23, is not in the record, since time must be asked upon taking the exception at the overruling of the motion for a new trial (§656 Burns 1908, §626 R. S. 1881).   p. 193.

5. TAXATION.—*Nonresidents.*—*Notes and Mortgages.*—Where a citizen and resident of Vermont loaned money upon notes and mortgages in Indiana, keeping such notes and mortgages in Vermont, and making loans through applications furnished by an Indiana attorney who was paid for his services, except for cancelations, by the applicant, such notes and mortgages are not taxable in Indiana.   p. 195.

From Shelby Circuit Court; *Will M. Sparks,* Judge.

Suit by Arthur B. Clapp against Charles H. Theobald, as treasurer of Shelby county.   From a decree for plaintiff, defendant appeals.   *Affirmed.*

*Frank L. Littleton* and *John J. Kelly,* for appellant.
*E. H. Chadwick* and *Carter & Morrison,* for appellee.

COMSTOCK, P. J.—Appellee brought this suit in the court below to have declared invalid an assessment of taxes made by the auditor of Shelby county, Indiana, against him, a

resident citizen of the state of Vermont, on promissory notes secured by mortgage on real estate in said county, executed by citizens of said county and owned by appellee, and by him kept, from the time of their execution and his ownership of them, in his possession at his residence in the state of Vermont. The cause was tried by the court, at the request of the parties a special finding of facts made and the conclusions of law stated thereon, and over a motion for a new trial a decree was entered in accordance with the finding against appellant.

Numerous errors are assigned, but the appellant relies only upon the third, fourth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth and nineteenth for reversal.

The third and fourth specifications of error relate to the action of the court in overruling, respectively, a demurrer to the first and second paragraphs of the complaint.

1. These alleged errors are not included in appellant's statement of points and authorities, nor are they discussed by him. They are therefore waived.

The fourteenth, fifteenth, sixteenth and seventeenth specifications assign that the court erred respectively in its conclusions of law one, two, three and four. Appellee

2. insists that said alleged errors are not properly presented, and cannot be considered. It is well settled that the correctness of conclusions of law can be contested only by proper exception to each conclusion, and by assigning as error in this court that the trial court erred in each conclusion of law, or that the conclusion of law which is challenged is erroneous. *Maynard* v. *Waidlich* (1901), 156 Ind. 562, and cases cited; *Wolverton* v. *Wolverton* (1904), 163 Ind. 26; *Midland R. Co.* v. *Dickason* (1892), 130 Ind. 164; *Royse* v. *Bourne* (1897), 149 Ind. 187; *Radabaugh* v. *Silvers* (1893), 135 Ind. 605; *Medical College of Ind.* v. *Commingore* (1895), 140 Ind. 296; *Sweitzer* v. *Heasley* (1895), 13 Ind. App. 567. It does not appear that any exception was taken to said conclusions of law or to any

one of them; and therefore, under the decisions in this State, they do not present any question for the consideration of this court.

The eighteenth specification assigns that the "court erred in rendering judgment in favor of the appellee." It has repeatedly been held by the courts of this State that

3. an assignment that "the court erred in rendering judgment" presents no question on appeal. *Hill* v. *Indianapolis, etc., R. Co.* (1903), 31 Ind. App. 98; *Johnston Glass Co.* v. *Lucas* (1905), 34 Ind. App. 418; *Seisler* v. *Smith* (1898), 150 Ind. 88, and cases cited; *Kimberlin* v. *Tow* (1893), 133 Ind. 696; *Lewis* v. *Albertson* (1899), 23 Ind. App. 147.

The nineteenth specification assigns that the court "erred in overruling appellant's motion for a new trial." The

4. grounds assigned for a new trial depend for their determination upon the evidence, which the appellee insists is not properly made a part of the record by a bill of exceptions filed within time. It appears from the record that appellant's motion for a new trial was overruled and exception taken on July 6, 1906, the same being the thirty-fifth judicial day of the May term, 1906, of the Shelby Circuit Court. On July 7, 1906, the same being the thirty-sixth judicial day of the May term, 1906, appellant prayed an appeal to this court, which was granted upon the filing of a sufficient bond, and 120 days given in which to file a bill of exceptions. What purports to be a bill of exceptions was filed on January 23, 1907, the same being the twenty-seventh judicial day of the December term, 1906, more than six months from the date of the overruling of appellant's motion for a new trial. On October 23, 1906, the same being the fourteenth judicial day of the October term, 1906, appellee moved for judgment in his favor on the findings and conclusions of law, which motion was sustained and exception taken and judgment rendered accordingly. On

October 26, 1906, the same being the seventeenth judicial day of the October term, 1906, appellant prayed an appeal to this court, which, upon the filing of a sufficient bond, was granted and 120 days were given in which to file his bill of exceptions. Without considering which allotment of time by the court in which to file a bill of exceptions governs, we think that the bill of exceptions containing the evidence is not properly in the record. The statute upon this subject reads: "The party objecting to the decision must except at the time the decision is made; but time may be given to reduce the exception to writing, but not beyond the term, unless by special leave of the court. * * * Provided, that if a motion for a new trial shall be filed in a cause in which such decision, so excepted to, is assigned as a reason for a new trial, such motion shall carry such decision and exception forward to the time of the ruling on such motion, and time may be then given by the court within which to reduce such exception to writing." §656 Burns 1908, §626 R. S. 1881. This section of the statute has been construed in *Citizens St. R. Co.* v. *Marvil* (1903), 161 Ind. 506, 511. In the course of the opinion the court says: "In this case the motions for a new trial were overruled on February 25, 1901, the second term of court after the motions were filed. The order-book entry of that day's proceedings in said cause only shows these rulings, and that they were each excepted to, but by whom the exceptions were taken, it is not stated. As leave to file a bill of exceptions was not given until several days after the motion for a new trial was overruled, it was without authority, for the court can only grant such leave at the time and in the manner provided by statute. *Hotsenpiller* v. *State* [1895], 144 Ind. 9, 11; *Minnick* v. *State, ex rel.* [1900], 154 Ind. 379." See *Nichols* v. *Central Trust Co.* (1909), *ante,* 64.

In *Hotsenpiller* v. *State, supra,* the time in which to file the bill of exceptions was not granted until four days after the motion for a new trial was overruled, while in the case

at bar it was granted one day after in the first instance and three days after in the last instance. The mere difference in length of time is not material. It follows that the evidence is not before us, and appellant's assignment presents no question. For the foregoing reasons the judgment must be affirmed.

We have, however, examined the record and considered the arguments of counsel. Among other facts specially found are the following: On August 6, 1903, the auditor of Shelby county placed upon the tax duplicate of Shelby county, Indiana, as property omitted by said plaintiff, and which had been omitted from taxation for the years named—giving a tabulated statement of "cash in bank," and notes secured by mortgages for the years 1895 to 1903, inclusive, etc. During all his life, for more than fifty years, the said plaintiff has been a citizen of the state of Vermont and resided continuously in the city of Brattleboro, Windham county, in said state. He has never been a resident or citizen of the State of Indiana, and never was in said state on April 1 in any year. At no time before May 1, 1898, was said plaintiff the owner of any property in the State of Indiana, or of any note or other obligation given for money loaned in said State, nor did he before then have any money loaned in said State. About June 1, 1898, he became the owner of notes executed by persons living in Shelby county, Indiana, in the sum of $150,000.40. All of said notes and the mortgages given to secure them were transferred to him by George Wilder, who was a citizen of Vermont. All of them were secured by mortgages on real estate in said county, and were made payable at the First National Bank of Shelbyville, Indiana. When said notes and mortgages were so transferred to him they were delivered to him at Brattleboro, Vermont, and he kept them in his possession there until the notes became due, when he sent them to said bank for payment and to be delivered to the makers of the same, except as hereinafter

stated. Nearly all the money paid on said notes was placed to his credit in said bank. Such as was not so placed to his credit was sent to him in Brattleboro, Vermont. After he became the owner of said notes in 1898 he loaned money belonging to him to persons residing in Shelby county, Indiana. They gave notes for the same, which were made payable to his order at the First National Bank of Shelbyville, Indiana, and were secured by mortgages given on real estate in said county. The loans were made in the following manner: Edward H. Chadwick resided in said city of Shelbyville, and was engaged in the business of loaning money belonging to other people, making abstracts of title and practicing law. Persons wanting to borrow money applied to said Chadwick for the same, and employed him to procure it for them. He obtained money from whomsoever he could, from many persons in Indiana and from persons living in other states, among‘whom was said plaintiff. When he applied to the plaintiff for money to loan he made a statement to him in writing of the amount wanted, the character of the person wanting it, his resources, the amount and value of the real estate security offered, the character of the title to the same, and gave his opinion of the desirability of the loan. When this was received said plaintiff wrote to said Chadwick whether he would furnish the money. In some instances he refused to make the loans. If the loan was made said Chadwick prepared the notes and mortgages, and when they were executed he sent the notes at once, or in a short time, to said plaintiff at Brattleboro, Vermont, and left the mortgages at once with the recorder of Shelby county, Indiana, for record. When they were recorded, said Chadwick sent them to said plaintiff at Brattleboro, Vermont. The plaintiff informed the officers of said bank that said Chadwick would have authority to sign his (plaintiff's) name to checks on said bank drawn on the plaintiff's account when the plaintiff loaned money on application made through said Chadwick, and the bank should

honor such checks. Said Chadwick drew such checks, and, as attorney, signed the plaintiff's name thereto, and on each check made a memorandum showing the person to whom the loan was made and the amount of the same. Such checks were, by the bank, together with a statement of his account, from time to time sent to the plaintiff in Brattleboro, Vermont, and said Chadwick never had them in his possession after the bank paid them, nor did he after that time have anything to do with them, or any knowledge of them. Said Chadwick never kept any pass-book showing the condition of the plaintiff's account in said bank, nor did any one keep such book for him, but he from time to time inquired at the bank concerning the amount of money to the plaintiff's credit in said bank, and in this way learned the state of the plaintiff's account there.

The abstracts made of the real estate on which mortgages were given to secure said loans made by the plaintiff were kept by said Chadwick until the loans were paid, and were then delivered to the borrower who paid for making them, and owned them. In the majority of instances the plaintiff gave said Chadwick authority to sign his name to the checks when the plaintiff agreed to make the loan. About twenty per cent of the loans were made by said Chadwick without first getting the plaintiff's consent to make them, but in all such cases the facts concerning such loans were with the notes submitted to the plaintiff for his approval, and all such loans were made by said Chadwick subject to the approval of the plaintiff, and on the express understanding that, if the loan was not approved by the plaintiff, the money represented by it should be refunded to the plaintiff. Such loans were not made unless there seemed to be some urgency on the part of the borrowers for them, and there was not time to communicate with the plaintiff before they were made. None of such loans was rejected by the plaintiff. Said Chadwick never kept any record of the loans so made by the plaintiff, and had nothing to do with the loan after

it was made, unless the borrower desired him to communicate with the plaintiff concerning it, except in a very few instances when a note was not paid when it was due and was sent to him by the plaintiff for collection or adjustment. All notes so transferred to the plaintiff and all that were executed to him for money loaned by him, together with the mortgage given to secure the same, were kept by him in said city of Brattleboro, Vermont, until a short time before they became due, when they were sent by him to said bank for collection and delivery to the makers of the same when the notes were paid. In some few instances, when the maker desired to make a partial payment on his note he insisted that he should see the credit placed on the same, and that it should be sent to Shelbyville, Indiana, for that purpose, and had said Chadwick to write to the plaintiff to that effect, and in such cases the note was sent to said Chadwick at Shelbyville, Indiana, the money was paid, and credit made in the presence of the maker of the note, and the same was returned at once to the plaintiff, and in some few instances, when parties wanted to make some change in the loan, they communicated the fact to the plaintiff through said Chadwick, and the note or notes were sent to him for the purpose named and again returned to the plaintiff in Vermont as soon as the business was attended to. Nearly all the money paid on the notes owned by the plaintiff was deposited to his credit in said bank, but some of it was sent to him at Brattleboro, Vermont. When a loan was paid, said Chadwick prepared a release of the mortgage, sent it to the plaintiff in Vermont, where he executed it and returned it to said Chadwick, who took it to the recorder's office in Shelby county, Indiana, and had it recorded. For this the plaintiff paid said Chadwick, and this is the only service he paid him for, and for all other service rendered by said Chadwick in connection with said loans he was paid by the borrower. During all of the years mentioned the plaintiff did not give in any part of said notes for taxation in the

State of Vermont, and during said time did not pay taxes on said notes at any place.

It was also found that before the commencement of this suit there was paid to the treasurer of Shelby county all taxes on the property assessed to the plaintiff as omitted property, except on the notes in question. There is a finding that there was a law in force in Vermont during all of said time by which choses in action were made taxable. This was irrelevant. The question here is not whether the taxes were payable or paid in Vermont, but whether the notes were taxable in this State.

Considering, for the purpose of this appeal, that the questions discussed by appellant are properly presented, we are of the opinion that the judgment must be affirmed upon the merits. The following citations are pertinent. *Powell* v. *City of Madison* (1863), 21 Ind. 335; *Herron* v. *Keeran* (1877), 59 Ind. 472, 26 Am. St. 87; *Foresman* v. *Byrns* (1879), 68 Ind. 247; *Standard Oil Co.* v. *Combs* (1884), 96 Ind. 179, 19 Am. Rep. 156; *Senour* v. *Ruth* (1895), 140 Ind. 318; *Buck* v. *Miller* (1897), 147 Ind. 586, 37 L. R. A. 384, 62 Am. St. 436; *Hathaway* v. *Edwards* (1908), 42 Ind. App. 22.

The facts in the case last cited are essentially different from those here involved, but the same questions are considered.

Judgment affirmed.


## CONCURRING OPINION.

ROBY, J.—I concur in the decision on the merits of the case. Under the authorities, I do not think the property was taxable in this State. The record exhibits the facts. If it did not, we could know nothing of them.